**In re CORPORATE AND LEISURE EVENT PRODUCTIONS, INC., Debtor.**

**No. 06–bk–01797–PHX–RJH.**

United States Bankruptcy Court, D. Arizona.

Sept. 5, 2006.

Michael P. Anthony, Carson, Messinger,
Elliott et al., Scott T. Ashby, Squire, Sand-

ers & Dempsey, L.L.P., James B. Ball, Poli & Ball, P.L.C., Paul A. Conant, Thomson Conant PLC, Joshua B. Mayes, Galbut and Hunter, PC, James F. Polese, Polese, Pietzsch, Williams & Nolan, PA, Phoenix, AZ, for Creditors.

Michael W. Carmel, Michael W. Carmel, Ltd., Phoenix, AZ, for Debtor.

Alan A. Meda, Stinson, Morrison, Hecker LLP, Robert J. Miller, Bryan Cave, LLP, Phoenix, AZ, for Interested Party.

Larry Lee Watson, Office of the U.S. Trustee, Phoenix, AZ, for U.S. Trustee.

## AMENDED OPINION DENYING RECEIVER'S FIRST MOTION TO DISMISS.

RANDOLPH J. HAINES, Bankruptcy Judge.

The issue here is who, if anyone, may file a Chapter 11 petition for a Debtor after a state court has appointed a Receiver for the debtor, enjoined the Debtor from filing a bankruptcy petition, and removed the Debtor's corporate officers and directors. The Court concludes that federal bankruptcy law preempts state law and remains available to an eligible debtor and its constituents notwithstanding creditors' use of state law remedies in an attempt to bar the bankruptcy courthouse door.

The Court denied the Receiver's first motion to dismiss by minute entry entered on the docket on June 28, 2006 and now issues this opinion to explain the Court's reasoning.

### Background Facts

Various creditors [1] filed state court actions asserting that they had been defrauded by the Debtor and twelve other related corporate entities.[2] The cases were consolidated before Judge Timothy Ryan, Maricopa County Superior Court. On May 8, 2006 Judge Ryan appointed Peter S. Davis as Receiver for thirteen or fourteen entities.[3] The receivership order authorized the Receiver to remove "any director, officer, independent contractor, employee or agent of any of the Receiver-

---

**1.** Debtor refers to them as "investors." The Court uses the term "creditor" in a very generic sense and does not here decide whether they should be deemed creditors or investors for purposes of the Bankruptcy Code. Debtor claims there were four initial plaintiff creditors and that approximately four other creditors subsequently intervened as plaintiffs, and that there are over sixty-five additional creditor/investors who have not joined in the state court lawsuits.

**2.** These entities fall into two categories: those owned and controlled by William Galyon, and those owned and controlled Bradley Nozicka. The bankruptcy cases of the seven Galyon entities are being jointly administered in the case of Global Grounds Greenery, L.L.C., No. 2–06–bk1701–RJH. There is a motion pending before Judge Baum in *In re BF Consulting, L.L.C.*, No. 2–06–bk–1792–RTB, for joint administration of the five bankruptcy cases of the Nozicka entities (which includes this case), and for transfer of these cases to this

Judge. The Galyon and Nozicka entities may not be related to each other in terms of ownership and control, but are apparently related in the sense of doing business with each other, and perhaps exclusively with each other. By using the term "related" the Court does not here decide that these two groups of bankruptcy cases are "related" to each other for purposes of Local Bankruptcy Rule 1073–1(d).

**3.** The Receiver's motion to dismiss asserts that the Receiver was appointed for thirteen entities, whereas the Receiver's declaration attached to that motion recites that he was appointed for fourteen entities. The Order Appointing Receiver states that Peter Davis is appointed Receiver for ten named entities, and that three additional defendants would be included in the group of Receivership Defendants upon proof of service being filed with the court and faxed to the Receiver. The record before this Court does not include that proof of service.

ship Defendants, from control of, management of, or participation in, the affairs of the Receivership Defendants." It enjoined the Receivership Defendants [4] from doing any act to interfere with the Receiver's custody and management of the receivership assets, and specifically enjoined them from filing "any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code ... without prior permission from this Court."

The Receiver has concluded that the Debtors had obtained more than $44 million from the creditors/investors in a Ponzi scheme, whereby new investors' funds were used to repay prior investors while no real business was being conducted to generate new funds. The Debtor admits that it "had never fully established the validity of its economic model," which involved raising investor funds to cover the expenses of concert promotion, and that this failure resulted in the business being "operated like a Ponzi-scheme."

The Receiver's efforts to marshal the receivership assets resulted in acrimony between the parties. The Receiver asserts that Mr. Nozicka and Mr. Galyon were uncooperative and lied about the location and/or ownership of various assets, while the Debtors claim the Receiver's efforts were "high-handed" and resulted in the destruction of the value of an operating restaurant and big screen televisions and electronics equipment.

Mr. Galyon signed and filed a Chapter 11 petition for the first Galyon entity on June 8, 2006 [5] and filed petitions for the other Galyon entities between then and June 14, 2006. Also on June 14, the Receiver removed Mr. Galyon and Mr. Nozicka from their positions as officers, directors and managers of all of the Receivership Defendants. Mr. Nozicka filed bankruptcy petitions for the Nozicka entities on June 16. The Debtors also promptly removed the receivership actions to bankruptcy court.

On June 19, 2006 the Receiver filed his first motion to dismiss these cases, based solely on the argument that Messrs. Galyon and Nozicka were not authorized to file these petitions.[6]

### Legal Analysis

There is no dispute that these entities are eligible to be Debtors under Bankruptcy Code §§ 109 and 301.[7] There is no dispute that all filings required by the Bankruptcy Code to commence these bankruptcy cases have been filed.

The only dispute, at least on the present motion, is who is authorized to take this

---

4. Although the caption to the receivership order makes clear that Mr. Galyon and Mr. Nozicka were named as defendants in the receivership action, the receivership order itself makes "Receivership Defendants" a defined term that includes only the fourteen corporate entities.

5. The first Galyon entity to file was Global Grounds Greenery, which is apparently not a Receivership Defendant.

6. The Court refers to the Receiver's Emergency Motion to Dismiss Unauthorized Chapter 11 Petition as his first motion to dismiss because he filed a second motion to dismiss on July 5, 2006 primarily on grounds of "bad

faith." That second motion to dismiss has not yet been responded to nor set for hearing, and is not addressed here. Parallel motions to dismiss the cases of the other Nozicka entities for lack of authority to file have been set for trial on July 20, 2006 by Judge Curley in *In re Old Pueblo Sounds, L.L.C.*, No. 2–06–bk–1793–SSC, and for hearing on July 25, 2006 by Judge Baum in *BF Consulting*. Also pending in the jointly administered cases before this Court, and set for trial on July 13, 2006 are cross motions for turnover and to excuse turnover pursuant to Bankruptcy Code § 543.

7. All references to the Bankruptcy Code, or the Code, are to 11 U.S.C. §§ 101–1532.

action on behalf of the Debtors. Ordinarily, this would be an intracorporate dispute with some officers, directors or shareholders objecting to bankruptcy relief and asserting that some other shareholder, officer or director lacked sufficient corporate authority to make the filing. There is apparently no such intracorporate dispute here. Rather, the dispute as to existence of corporate authority is raised by creditors, who prefer the remedy they have in state court over a bankruptcy remedy.

This dispute is not governed by the Bankruptcy Code. Indeed, the complaining creditors and their Receiver cannot point to any provision of the Bankruptcy Code that has even allegedly been violated by these filings. But while intracorporate disputes would ordinarily be governed by the law of the state of incorporation, this particular kind of creditor-driven intracorporate dispute is governed instead by federal common law, as will be seen.

Much of the history of bankruptcy law deals with efforts by creditors to escape bankruptcy court jurisdiction or to enforce remedies provided by state law that are unavailable under bankruptcy law. Before this country had a federal bankruptcy law, a debtor who had been discharged by one state's insolvency law remained at risk that creditors could send him to debtor's prison in another state, if he ventured there. It was to put an end to this practice that the Constitution conferred on Congress the unique uniform bankruptcy power.[8] Once Congress exercises that power it preempts and supersedes all state bankruptcy and insolvency laws [9] and other state law remedies that might interfere with the uniform federal bankruptcy system.[10]

The paramount and exclusive federal jurisdiction in this regard was noted early on by the great equity jurist, Justice Story. Construing a bankruptcy statute that contained no automatic stay, Justice Story concluded that Congress intended to vest bankruptcy courts with jurisdiction to "suspend or control all proceedings in the state courts":

It is farther objected that, if the jurisdiction of the District Court is as broad and comprehensive as the terms of the [Bankruptcy Act of 1841] justify according to the interpretation here insisted on, it operates or may operate to suspend or control all proceedings in the state courts either then pending or thereafter to be brought by any creditor or person having any adverse interest to enforce his rights or obtain remedial redress against the bankrupt or his assets after the bankruptcy. We entertain no doubt that, under the provisions of the 6th section of the act, the District

---

8. U.S. Const. art. I, § 8, cl. 4; *Cent. Va. Cmty. Coll. v. Katz*, — U.S. —, — – —, 126 S.Ct. 990, 997–1000, 163 L.Ed.2d 945 (2006). The power is unique (except perhaps for the Naturalization Power contained in the same clause) because it is apparently the only Article I power that may override the States' reserved sovereign immunity, as *Katz* held.

9. *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819).

10. *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir.2005)(Bankruptcy Code preempts state statute giving preference avoidance powers to an assignee for benefit of creditors); *In re Miles*, 430 F.3d 1083, 1089 (9th Cir.2005)(bankruptcy law preempts state remedies for bad faith filing because the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code" "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike," and which needs to be "jealously guard[ed] ... from even slight incursions and disruptions" from state law remedies), quoting *MSR Exploration, Ltd., v. Meridian Oil, Inc.*, 74 F.3d 910, 915 (9th Cir.1996).

Court does possess full jurisdiction to suspend or control such proceedings in the state courts, not by acting on the courts, over which it possesses no authority; but by acting on the parties through the instrumentality of an injunction or other remedial proceedings in equity upon due application made by the assignee and a proper case being laid before the court requiring such interference.... Similar proceedings have been instituted in England in cases of bankruptcy; and they were without doubt in the contemplation of Congress as indispensable to the practical working of the bankrupt system.

. . . .

... Congress did not intend to trust the working of the bankrupt system solely to the state courts of twenty-six states, which were independent of any control by the general government, and were under no obligations to carry the system into effect. The judicial power of the United States is, by the Constitution, competent to all such purposes; and Congress, by the act, intended to secure the complete administration of the whole system in its own courts, as it constitutionally might do.[11]

As Justice Story there noted, the Bankruptcy Act of 1841 did not specifically authorize bankruptcy courts to enjoin state courts, and in fact the Judiciary Act of 1793 expressly prohibited federal courts from enjoining state courts. Consequently if a state court first acquired jurisdiction over a debtor's assets such as through a receivership, a subsequent bankruptcy court arguably could not reach them.[12] That is virtually identical to the kind of race to the courthouse that the creditors here claim to have won. But Congress closed this loophole in the Bankruptcy Act of 1867, in which Congress for the first time amended the Judiciary Act of 1793 to expressly permit federal district courts sitting in bankruptcy to stay proceedings in state courts.[13]

Of course the current Bankruptcy Code goes even further, not only by making the stay automatic, statutory and specifically applicable to government entities,[14] but also by specifically requiring receivers to turn over receivership property to bankruptcy trustees and debtors in possession.[15]

■ Given this background, it is not surprising that all courts to have addressed the precise issue after 1867—a creditor's argument that a receivership order removes authority for a debtor or its corporate constituents to file a bankruptcy case—have concluded that state court receivership orders cannot bar debtors from resorting to the exclusive bankruptcy court jurisdiction. Even prior to the Chandler Act (which contained the first corporate reorganization provisions), the Sixth Circuit so concluded even though the corporate debtor had consented to the receivership that had been pending for over two years and even though the state court "has issued the usual injunction against inference." "[T]he pendency of a receivership does not ordinarily prevent the filing of a

---

**11.** *Ex parte Christy*, 44 U.S. (3 How.) 292, 318–20, 11 L.Ed. 603 (1845).

**12.** *Peck v. Jenness*, 48 U.S. (7 How.) 612, 625–26, 12 L.Ed. 841 (1849).

**13.** Act of 1867, 14 Stat. 526, § 21; *see Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 131–32, 62 S.Ct. 139, 86 L.Ed. 100 (1941).

**14.** The automatic stay of Bankruptcy Code § 362(a) is "applicable to all entities," and Bankruptcy Code § 101(15) defines entity to include "governmental unit."

**15.** Bankruptcy Code § 543.

voluntary petition."[16] That concise conclusion appears to be good law today and, in the absence of any statutory language or controlling case law to the contrary, is dispositive here.[17]

Ten years later, the Sixth Circuit reached the same conclusion when the receivership order specifically enjoined the debtor's directors, officers and stockholders "from preparing or in any way aiding the institution of reorganization proceedings on behalf of the debtor corporation in the District Court without the consent of such state court."[18] That court concluded that such a state court restraining order erroneously "denied to the appellee, its directors, stockholders and attorneys, ac-

cess to the federal courts, thus depriving them of their constitutional right to relief under Sec. 77B of the Bankruptcy Act," citing the Uniform Bankruptcy Power of the Constitution.[19] Shortly thereafter, the District Court for the Southern District of New York reached the same conclusion: "The appointment by a state court of a permanent receiver with full power to act for the corporation does not affect the right of directors to act on behalf of a corporation in federal bankruptcy proceedings."[20] Other courts have reached the same conclusion under the current Bankruptcy Code.[21] The only cases to the contrary appear to arise when there is a purely intracorporate dispute (rather than a dispute with creditors) as to who has the

**16.** *Struthers Furnace Co. v. Grant,* 30 F.2d 576, 577 (6th Cir.1929).

**17.** *Pa. Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 564, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)("We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure"); *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.,* 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. The Court has followed this rule with particular care in construing the scope of bankruptcy codifications."(citation omitted)).

**18.** *Merritt v. Mt. Forest Fur Farms of Am., Inc.,* 103 F.2d 69, 71 (6th Cir.1939).

**19.** *Id.* Although the Supreme Court subsequently made clear that there is no constitutional right to bankruptcy relief, *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the privileges provided by the Bankruptcy Code may be among the "privileges and immunities" that the Fourteenth Amendment forbids states to abridge. *See* Randolph J. Haines, *Getting to Abrogation,* 75 Am. Bankr.L.J. 447 (2001).

**20.** *In re Klein's Outlet, Inc.,* 50 F.Supp. 557, 559 (S.D.N.Y.1942).

**21.** *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.),* 762 F.2d 542, 552 (7th Cir.1985)("[T]the exclusivity of an administrative receiver's title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief."); *Larson v. Kreisers, Inc.,* 112 B.R. 996, 998 & 1000 (Bankr.D.S.D. 1990) ("The court ... has not unearthed any statutory or decisional law to support the contention that a state court receivership generally bars bankruptcy filing. Perhaps this is so because the argument runs so blatantly against the statutory right of a debtor to the privileges of the national statute on bankruptcies and the inherent prohibition against any bar by any other authority to the exercise of that right.... [The debtor's] officers and directors could pass a resolution to file bankruptcy despite state court orders not to do so."(citations omitted)); *In re S & S Liquor Mart, Inc.,* 52 B.R. 226, 227 (Bankr.D.R.I. 1985) ("[I]t is fundamental that a state court receivership proceeding may not operate to deny a corporate debtor access to the federal bankruptcy courts [citations omitted] and it has been held that an order in a state court receivership specifically restraining the debtor corporation, its stockholders, officers, and directors from instituting federal reorganization proceedings is an unconstitutional deprivation of the right to bankruptcy relief."); *In re Donaldson Ford, Inc.,* 19 B.R. 425 (Bankr. N.D.Ohio 1982).

authority to file,[22] or where the debtor is "ineligible for debtor status" under the Bankruptcy Code.[23]

■ It is of course true that bankruptcy courts generally look to state law to determine who is authorized to file a voluntary petition for a corporation, partnership or other kind of organizational entity. This rule, however, derives not from the language of the Bankruptcy Code (or its predecessor Bankruptcy Act), but rather from federal common law[24] in the absence of statutory directive. The Bankruptcy Code neither specifies who has authority to file a corporate petition nor requires that state law be the exclusive source of any such authority.[25]

■ Just as obviously, however, there is a federal common law exception to this reliance on state law when the state law is in the form of a receivership order that attempts to preclude any of the original constituents of the organizational entity from filing a petition on its behalf, in order to maintain the state court remedy that has been obtained by creditors. It makes no difference whether the corporate officers and directors were actually removed by the receiver or the receivership order merely enjoins their interference or filing of a petition.[26] In either case, state law withdraws their authority to file for bankruptcy relief and yet in both cases the unanimous federal common law holds that they are nevertheless entitled to do so. Much of this common law predates the drafting and adoption of the Bankruptcy Code, so Congress must be assumed to have incorporated it when it drafted the Code.

**22.** *Price v. Gurney,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945) (owner of 7% of stock may not file petition for corporation when directors oppose it); *In re Gen–Air Plumbing & Remodeling, Inc.,* 208 B.R. 426 (Bankr. N.D.Ill.1997). And even if there is such an intracorporate dispute over management authority, creditors may not be able to rely on it to obtain dismissal of a bankruptcy petition. *Royal Indem. Co. v. Am. Bond & Mort. Co.,* 289 U.S. 165, 171, 53 S.Ct. 551, 77 L.Ed. 1100 (1933)("The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection."); *In re Guanacevi Tunnel Co.,* 201 F. 316, 318 (2d Cir.1912)(creditor's argument that Arizona law requires a majority of shareholders to authorize a voluntary petition "is one which a creditor has no standing to make in the case of a voluntary petition").

**23.** *Oil & Gas Co. v. Duryee,* 9 F.3d 771, 773 (9th Cir.1993).

**24.** Federal common law is appropriate in two categories of cases, "those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640–41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (citations omitted). *See* Adam J. Levitin, *Toward A Federal Common Law of Bankruptcy: Judicial Lawmaking in a Statutory Regime,* 80 Am. Bankr.L.J. (2006)(forthcoming). Although not directly on point, the Supreme Court's recent decision in *Katz, supra* note 8, underscores the uniquely federal interests that underlie bankruptcy law.

**25.** "Other than the requirement that the petition be a 'voluntary' act, 11 U.S.C. § 301, the Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding." *In re Quarter Moon Livestock Co., Inc.,* 116 B.R. 775, 778 (Bankr.D.Idaho 1990), quoting *In re Autumn Press, Inc.,* 20 B.R. 60, 61 (Bankr.D.Mass.1982).

**26.** It should go without saying that if removal of corporate officers and directors by a receivership order were sufficient to prevent a bankruptcy filing, creditors who seek their state court remedies to the exclusion of all others would routinely obtain receivership orders with such boilerplate language. This is a tactic that bankruptcy law has prevented at least since 1867.

Indeed, Congress did expressly incorporate this common law when the Chandler Act of 1938 made explicit that a bankruptcy case would ordinarily supersede a state receivership and that a state receiver would ordinarily be required to turn over the estate assets to a debtor in possession or trustee. Bankruptcy Act § 2a(21) is the predecessor to the Code's § 543. As explained by the then-leading authority, "its provisions enact what was already established by prior case law," and this "codification of the bankruptcy court's powers as to superseded receiverships, general assignments and similar proceedings is a desirable change, removing possible controversies and conflicts as to jurisdiction." [27] The legislative history expressly recognized that there was nothing in the Bankruptcy Act of 1898 that required receivers to be divested of property when the debtor is thrown into bankruptcy, but "the courts have supplied the gap and the bill codifies that result." [28] The fact that Congress granted such express relief notwithstanding that receivership orders generally included the "usual injunction against inference" [29] necessarily implies that Congress intended such state law not to control who may petition for bankruptcy relief.

■ Nor is it any answer to say that analysis should not apply here because this Receiver did have authority to file for the receivership entities. [30] Congress obviously intended bankruptcy relief to be available for the benefit of many of the constituents of a business entity, including not only the creditor interests but also the equity interests and perhaps those of employees and customers as well. [31] While bankruptcy case law generally refers to state law to determine who has eligibility to file the petition, it unanimously refuses to do so (in the absence of an intracorporate dispute) when state law has provided a creditor's remedy to vest that authority in a receiver.

■ Finally, it is clear that Congress did not intend a bright-line rule to govern these issues either way. Even though the ordinary rule is that receivers must turn over estate property to a debtor in possession or trustee, Code § 543(b), the bankruptcy courts have discretion to waive that requirement if the interests of creditors would be better served by continuing the receiver in possession. Code § 543(d)(1). And although the existence of bankruptcy jurisdiction may be undeniable, bankruptcy courts nevertheless have discretion to abstain or suspend proceedings if "the interests of creditors and the debtor would

27. 1 JAMES WM. MOORE, ET AL., COLLIER ON BANKRUPTCY ¶ 2.77, at 390.8 & (1) (14th ed.1974).

28. H.R. 6439, 75th Cong., 1st Sess 12 (1937), quoted in COLLIER, *supra*, at 390.8(2), n. 4; *Emil v. Hanley (In re Russell)*, 318 U.S. 515, 517–18, 63 S.Ct. 687, 87 L.Ed. 954 (1943)("These provisions [§ 2a(21) and 69d] of the Bankruptcy Act are new. There were added in 1938 by the Chandler Act.... These sections are in part declaratory of the law as it existed prior to the Chandler Act.").

29. *Struthers Furnace Co. v. Grant*, 30 F.2d 576, 577 (6th Cir.1929).

30. Query, though, whether a filing by a receiver for a partnership entity (or entity that is undefined in the Bankruptcy Code that may be analogized to a partnership) would have to be treated as an involuntary filing, because Code § 303(b)(3) does to some extent prescribe who must consent to the filing of a voluntary partnership petition. *In re Monterey Equities–Hillside*, 73 B.R. 749, 752 (Bankr.N.D.Cal.1987).

31. "Determining what would constitute a successful reorganization involves balancing the interests of the affected entities—the debtor, creditors, and employees." *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 525, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

be better served." Code § 305(a)(1). As the Supreme Court held in resolving a somewhat similar conflict between two federal statutes, "[t]he bankruptcy court is a court of equity and, in making this determination it is in a very real sense balancing the equities." [32] The express powers to excuse turnover or abstain provide ample authority to balance the equities based on the facts of each individual case, and provide a more sensible and fact-based resolution than any bright-line test of corporate authority or race to the courthouse could provide. That is obviously the remedy Congress preferred and dictated, rather than the simple race to the courthouse on which the Receiver and creditors rely.

For these reasons, the Receiver's first motion to dismiss should be denied, without prejudice to its second motion to dismiss, its motion to excuse turnover (or the Debtor's motion for turnover) and its motion to abstain or suspend.